# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MURVILLE LAVELLE LAMPKIN,<br><br>Defendant. | Case No. 3:15-cr-00005-SLG-KFM<br><br>**FINAL REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS SEARCH OF TABLET NOT AUTHORIZED BY SEARCH WARRANT (DOC. 491)** |

### I. MOTION PRESENTED

Defendant Murville Lavelle Lampkin (Lampkin) moves to suppress the evidence obtained during law enforcement's execution of a warrant authorizing the search of a Samsung cellular phone for evidence of a drug trafficking and money laundering conspiracy. (Doc. 491; 492). Lampkin argues that the evidence must be suppressed, because the device searched was a Samsung tablet computer rather than a cellular phone and therefore outside the scope of the warrant. (Doc. 492 at 2-6).

The government opposes, arguing that the search of the tablet was within the scope of the search warrant. (Doc. 497). Observing that the warrant authorized the search of a cellular phone with a serial number identical to the tablet actually searched, the government argues that the misidentification of the tablet as a phone in the warrant amounts to a scrivener's error that does not affect the legality of the

search. (Doc. 497 at 5-7). The government further argues that the error was a reasonable mistake, contending that the tablet was indistinguishable from a cellphone. (Doc. 497 at 6-7).

The parties have fully briefed the issues, and the Court held an evidentiary hearing and heard argument. (Doc. 517 hereinafter "Tr." for Transcript). Lampkin's Motion to Suppress is now ripe for this Court's consideration.

## II. FACTUAL BACKGROUND

### A. The Seizure of the Samsung Tablet

In May 2014, the Federal Bureau of Investigation's (FBI) Safe Streets Task Force (Task Force) and the Anchorage Police Department's (APD) Special Assignment Unit began working with a confidential human source (CHS). (Doc. 497-1 at 26). The Task Force obtained information from the CHS, which led them to suspect that the owner of a nail salon, Toa Dahn Ly (Ly) was engaged in drug trafficking and money laundering activities. (*Id.* at 26-30).

In December 2014, law enforcement began to suspect that Lampkin was involved with Ly's activities after observing him shake hands with Ly inside Ly's nail salon at a time when the nail salon was closed for business. (*Id.* at 42-44). After further investigation, the CHS contacted Ly on January 8, 2015, and arranged to purchase a half ounce of heroin from Ly for $1,300. (*Id.* at 42-45). Ly directed the CHS to meet his associate, who was later revealed to be Lampkin, near a McDonald's restaurant. (*Id.* at 45-46). The CHS purchased heroin from Lampkin, who directed the CHS to contact Ly to arrange future drug transactions. (*Id.*).

Based on this, and other information, the Task Force obtained a number of search warrants for locations suspected to contain evidence related to their investigation of Ly, Lampkin and other co-conspirators throughout Alaska and the Seattle, Washington area. (Tr. at 31).

One of the warrants, 3:15-mj-00016-KFM, authorized law enforcement to search a dwelling on Gaylene Circle, in Anchorage, Alaska, which was believed to be Lampkin's residence. (Doc. 497-1 at 1, 43). The warrant authorized law enforcement to search for evidence of drug trafficking and money laundering, and to seize cellular phones and computers. (*Id*. at 1-6). The warrant specified that computers were not to be searched unless an independent search warrant was obtained. (*Id*. at 5).

On January 14, 2015, the Task Force executed these warrants. (Tr. at 31-32; Doc. 497-1). During the execution of the search warrant for Lampkin's residence, law enforcement searched a bedroom, and discovered a Samsung device within an open drawer of a nightstand. (Tr. at 7-9; Doc. 497-2). FBI Special Agent Derek Espeland (Espeland) testified that the device appeared to be a cellular phone or some other kind of computer that could contain data. (*Id*. at 12). Agent Espeland inspected the device, and discovered a serial number on a label attached underneath the Samsung logo on the back of the device. (Tr. at 12-15; Doc. 497-4; Doc. 497-5). The serial number read: S/N RF2F90HHFQY. (*Id*.).

Agent Espeland placed the device in a sealed bag, which he labeled with the device's serial number and a description of the device as a "Samsung." (Tr. at 11-15,

*U.S. v. Lampkin*
3:15-cr-00005-SLG-KFM
Final Report & Recommendation re Motion to Suppress                    Page 3 of 18

34; Doc. 497-8).

## B. The Search Warrant Application

As part of his work as a member of the Task Force, APD Officer Eric Smith (Smith) was in charge of processing the evidence obtained from the January 14, 2015 search warrant executions. (Tr. at 33). As part of his task, Officer Smith was responsible for obtaining follow-up search warrants for electronic devices seized during the January 14 searches. (Tr. at 32-33).

On January 27, 2015, Officer Smith applied for a search warrant to search the Samsung device for evidence of drug trafficking and money laundering conspiracies. (Tr. at 34; Doc. 497-6). In his application, Smith described the device as "a Samsung cell phone, serial number RF2F90HHFQY[.]" (Doc. 497-6 at 2).

Smith's affidavit states that drug traffickers often keep itemized lists of expenses and receipts related to their criminal activities. (Doc. 497-6 at 17). They also take photographs or videos of themselves and their co-conspirators with controlled substances, large amounts of currency, guns and other expensive items. (*Id*. at 18). Smith explained that, in his experience, these records, photographs and videos are often stored in digital format on computers, tablets, smart phones or other internet capable devices. (*Id*. at 18, 20). The affidavit also provided a description of the search of the Gaylene Circle residence, and recounted the facts of the investigation, which established probable cause to search the Gaylene Circle address for evidence of drug trafficking and money laundering. (*Id*. at 21-53

Based on these representations and Officer Smith's summary of the

investigation of Lampkin and his co-conspirators, Magistrate Judge Kevin McCoy issued search warrant 3:15-mj-00031-KFM, authorizing law enforcement to search the Samsung device, and two other electronic devices seized from the Gaylene Circle address, for evidence of drug trafficking and money laundering, including records of phone calls, text messages and address books. (Docs. 492-1; 497-6 at 1, 68).

### C. The Execution of the Search Warrant

Officer Smith executed the search warrant for the Samsung device. (Tr. at 36-37). After turning the device on, Smith used a program called Cellebrite to download the device's list of contacts. (*Id.*). Through Cellebrite, Smith also learned that the device's model name was "Samsung Galaxy Tab 4." (*Id.* at 43). He then proceeded to manually review the device, taking screenshots of items of interest. (*Id.*).

Throughout the search, Officer Smith believed that the device was a cellular phone. (*See* Tr. at 36). His belief was based on the device's size, the fact that it was manufactured by Samsung, a company which he understood to be a major manufacturer of cellular phones, and because the device indicated it was receiving a 4G data signal. (*Id.* at 34-36, 46). Although the Cellebrite report identified the device as a "Samsung Galaxy Tab," he did not consider that the device might in fact be a tablet computer. (*Id.* at 46).

At the evidentiary hearing, the government prosecutor stipulated that the neither the device's exterior nor the contents of its internal programs contained any indication that it was a cellular phone. (*Id.* at 23-24).

### D. Evidence Regarding the Distinctions Between Tablets and Cellular Phones

At the evidentiary hearing, Agent Espeland testified that tablet computers and cellular phones are overlapping categories of electronic devices. (Tr. at 21). Espeland acknowledged that older cellular phones were limited to making telephone calls. (Tr. at 21). He noted however that new cellular smart phones, such as those produced by Samsung and Apple, have capabilities similar to tablet computers, and can access the internet and a variety of other software applications. (*Id*. at 21-22). When he handled the Samsung device during the search, Espeland did not make any assumptions about whether the device was a tablet or phone. (*Id*. at 17).

Officer Smith testified that both cellular phones and tablets can be used to communicate using voice-to-voice, face-to-face and text messaging applications. (*Id*. at 40-41). He explained that a program called Skype can be used to make phone calls using an internet connection. (*Id*. at 47). Smith stated that in past cases, he has searched phones that had no call logs. (*Id*.). In other cases, he has searched internet capable phones that did not have cellular phone service, but were still capable of functioning like tablets, in that they could take pictures and connect to the internet. (*Id*.).

The Court takes notice, that tablet computers and internet capable smart phones have many overlapping capabilities. Tablets and smart phones are both rectangular electronic devices with large touch screens that dominate the front-side of the devices. Both types of devices can be used for wireless text, voice and video

communication, to access the internet, and to capture and store pictures and other data. Further, both tablets and smart phones can connect to the internet using wireless 3G and 4G networks.

Generally, tablet computers tend to be larger than smart phones, however, as the government observes in its opposition, some of the larger smart phones on the market are 7 inches in screen length. (Doc. 497 at 6). For example, Samsung has released the Samsung Galaxy W, a cellular phone with a 7 inch screen. (*Id.* (citing Richard Trenholm, *7-inch Samsung Galaxy W is Samsung's biggest phone yet* (June 2, 2014), https://www.cnet.com/news/7-inch-samsung-galaxy-w-is-samsungs-biggest-phone-yet/).

### E. The Dimensions and Appearance of the Samsung Device

For the reader's convenience, the Court has attached three pictures of the device on pages 16-18 of this Report and Recommendation as Appendices A-C. The pictures were originally submitted by the government in support of its opposition at Dockets 497-3, 497-4 and 497-9, and were entered into evidence at the evidentiary hearing. (Tr. at 28). Appendix A (Doc. 497-3) depicts the front of the device when turned off, while Appendix B (Doc. 497-4) depicts the back of the device. Appendix C depicts the device's home screen when turned on. (Doc. 497-9).

Upon casual review, the device appears to be either a small tablet computer or a large smart phone. The government represents it is approximately 7 inches in size, and presented the photo in Appendix A. (Doc. 497 at 6). At the evidentiary hearing, the Court had an opportunity to view the device. The Court concludes that

the device's screen looks to be roughly 7 inches in screen length. When turned on, the device's home screen resembles the home screen of either a tablet or a smart phone. While it appears to have a messaging application at the bottom of the home screen, it does not appear to have a phone application.

### III. LEGAL ANALYSIS

#### A. Suppression Is Inappropriate Because the Warrant Identified the Tablet With Sufficient Specificity

Lampkin argues that the evidence seized from the Samsung tablet must be suppressed because the warrant failed to describe the tablet with sufficient specificity, and, as a result, the search of the tablet was outside the scope of warrant, which authorized the search of a Samsung cellphone, and not a tablet. (Doc. 492 at 2-6). However, as the government notes in its opposition, although the warrant and Officer Smith's application incorrectly refers to the device as a Samsung cellphone, the warrant also refers the device by its correct make, Samsung, and its correct serial number, RF2F90HHFQY. (Doc. 497 at 5).

Having reviewed the parties' arguments and applicable law, the Court finds that this error amounts to a technical misstatement, which does not render the warrant insufficiently particular and does not require suppression of the evidence seized from the tablet.

The Fourth Amendment requires that warrants describe the place or objects to be searched with particularity. *See United States v. Mann,* 389 F.3d 869, 877–78 (9th Cir. 2004). The description must be specific enough to enable the executing officer to reasonably identify the things authorized to be searched and seized. *Id.*

The particularity requirement guards against unconstitutional general, exploratory searches. *Id*. It also ensures that the issuing magistrate is fully apprised of the scope of the search and can thus accurately determine whether the search is supported by probable cause. *Id*.

In determining whether a warrant is sufficiently particular in its description of items to be searched, courts focus on: "(1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Mann*, 389 F.3d at 878. Additionally, courts consider (1) whether the description enables officers to identify the place or object with reasonable effort, and (2) whether there is any probability that the officers might mistakenly search an area or object outside of the scope of the warrant. *See id*. at 876; *see also United States v. Lora-Solano,* 330 F.3d 1288, 1293 (10th Cir.2003); *United States v. Pelayo-Landero,* 285 F.3d 491, 496 (6th Cir.2002); *United States v. Vega-Figueroa,* 234 F.3d 744, 756 (1st Cir.2000); *Velardi v. Walsh,* 40 F.3d 569, 576 (2d Cir.1994); *United States v. Gilliam,* 975 F.2d 1050, 1055 (4th Cir.1992); *United States v. Clement,* 747 F.2d 460, 461 (8th Cir.1984); *United States v. Avarello,* 592 F.2d 1339, 1344 (5th Cir.1979).

Under this analysis, courts have consistently concluded that technical inaccuracies in a warrant's description of the property to be searched do not require

suppression of the evidence where there appears to be no real possibility that law enforcement would mistakenly search the wrong premises or items.

For example, in *United States v. Mann*, the Ninth Circuit concluded that suppression of evidence seized from a campsite was not appropriate where the warrant incorrectly described the campground to be searched. 898 F.3d at 872, 876-877. It was described as located "up Cherry Creek Road on the West Fork of Lower Deer Creek, T2S, R14E, NW 1/4 of Section 21, Sweet Grass County, Montana, occupied by James Francis Pollender[,]" when the camp was in fact located on Upper Deer Creek. *Id*. The court reasoned that, despite the misstatement, the warrant was sufficiently particular and suppression was inappropriate because Cherry Creek was the only road in Section 21 of the county, and the road only led to Upper Deer Creek. *Id*. at 877. Further the two officers executing the warrant were personally familiar with the campsite.

Similarly, in *United States v. Turner*, the Ninth Circuit upheld the search of a home pursuant to a warrant that contained an incorrect street address. 770 F.2d at 1511. The warrant authorized the search of "2756 Mountain View Drive[,]" when, in fact, the house the officers intended to search and actually searched was 2800 Mountain View Drive. *Id*. at 1509. Despite the inaccuracy, the Ninth Circuit upheld the warrant as sufficiently particular because the verbal description of the house was specific and accurate, and the officers executing the warrant were personally familiar with the location. *Id*. at 1511. Additionally, the Ninth Circuit noted that the inclusion of the incorrect address was a reasonable mistake, in light of the fact

that there was no street number affixed to the house, and the driveway to the house had three mail boxes for house numbers 2800, 2810 and 2756. *Id*. at 1508, 1511.

In this case, the warrant described the device as "a Samsung cell phone, serial number RF2F90HHFQY," (Doc. 492-1 at 3), while the device actually searched was a Samsung tablet, serial number RF2F90HHFQY, (Tr. at 12-15; Doc. 497-4; Doc. 497-5).

Despite the technically inaccurate description, the warrant was sufficiently particular because it enabled Officer Smith to easily identify the object to be searched. *Mann*, 389 F.3d at 876. The device in question had a Samsung logo on the back along with a serial number matching the number listed in the warrant. (*See* Appendix B).

Accordingly, it does not appear that Lampkin's Fourth Amendment rights were in anyway prejudiced by the inaccuracy of the words describing the tablet. As Lampkin's counsel conceded at oral argument, Magistrate Judge McCoy's decision would likely not have been affected had he known that the device to be searched was a tablet, and not a cellular phone. (Tr. at 53).

Likewise, based on the information known to Officer Smith at the time he applied for the warrant, it was not unreasonable for him to assume that it was a cellular phone. *Mann*, 389 F.3d at 878. The device appears to be either a small tablet, or a large cellular smart phone, and, as Officer Smith noted, Samsung is a major manufacturer of cellular phones. There is nothing on the exterior of the phone indicating whether it is a tablet or a cellular phone. *See* Appendices A-B.

Finally, the Court notes that, as opposed to the inaccurate descriptions of places to be searched at issue in *Tuner* and *Mann*, here, there was no possibility that the rights of a third party could be infringed due to the inaccuracy in the warrant. The device, regardless of whether it was a tablet or cellular phone, was seized pursuant to a lawful search warrant executed on Gaylene Circle. For this same reason, there was no possibility that the inaccuracy might render the warrant an unconstitutional, general warrant, authorizing law enforcement to rummage around another person's belongings. *Mann*, 389 F.3d at 877. The belonging in question had already been identified and seized as an electronic device obtaining potential evidence.

This Court concludes that the warrant to search the Samsung tablet was sufficiently particular and suppression of the evidence is inappropriate in this case because: (1) probable cause was established to search the electronic device regardless of whether it was a tablet or a cellular phone; (2) there was no real possibility that Officer Smith could have mistakenly searched the wrong device; and (3) there is no prejudice to the defendant or any third party.

### B. Officer Smith Made a Reasonable Mistake in Misidentifying the Device

At oral argument, Lampkin further argued that the evidence must be suppressed because Officer Smith should have ceased searching the tablet and applied for a corrected warrant upon realizing that the suspected phone was in fact a tablet. (Tr. at 50). The Court is not aware of, and Lampkin has provided no authority holding that law enforcement is required to obtain a second warrant upon

realizing that the first warrant contained an inaccurate description of the property to be searched.

In *Maryland v. Garrison*, the Supreme Court upheld the search of the entire third floor of an apartment building when law enforcement reasonably believed that the floor contained only one apartment but it was later discovered to contain two units. 480 U.S. 79, 80-89 (1987). Based on information obtained from an informant, surveillance of the building and utility company records, law enforcement initially concluded that the third floor of the building contained a single unit, which was believed to belong to a suspect named McWebb. *Id.* at 80-81. With that understanding, they obtained a warrant to search McWebb and his apartment, described as the third floor of the building. *Id.* at 81-82.

While executing the warrant, the officers discovered that the third floor contained two apartment units, and immediately discontinued their search. *Id.* at 81. However, before realizing their mistake, the officers had entered an apartment occupied by the defendant, Garrison, and discovered heroin, cash and drug paraphernalia inside. *Id.*

The Court held that the search of Garrison's apartment was lawful, concluding that the discovery of facts, unknown at the time the warrant was issued, did not retroactively invalidate the warrant. *Id.* at 86-89. The Court found that the officers' mistake was reasonable considering their prior efforts to ascertain and identify the place to be searched, and, as a result, their conduct was not unlawful under the Fourth Amendment. *Id.* at 88-89. The Court stated in *dicta* that the

officers were required to discontinue the search upon discovering that they might enter into an apartment erroneously included in the warrant. *Id.* at 87.

Here, the Court finds that, like the officers in *Garrison*, Officer Smith reasonably mistook the Samsung tablet for a Samsung cellular phone. The Court finds that Smith testified honestly that he believed, at the time of the search, that the device was a cellular phone based on its make and its connection to a 4G data network, a type of wireless internet connection commonly used by cellular phones. As noted, *supra*, there was no indication on the outside of the device that it was not a phone.

The Court also finds that Officer Smith testified credibly when he said that he never considered that the device might be a tablet at any point during the search. (Tr. at 46). However, assuming, *arguendo*, that Officer Smith's mistake became unreasonable once he discovered the device was a "Samsung Galaxy Tab" and failed to find a phone application on the home screen, the Court nevertheless concludes that suppression would be unwarranted. The instant case is distinguishable from *Garrison*, in that there was never any chance that either the rights of Lampkin or any third party could be infringed by the search of the tablet. In contrast to the two apartments occupied by two different individuals in *Garrison*, the object of the search—the Samsung device—had been seized from a residence occupied by Lampkin. There was no chance that a third party's rights were infringed from the search of a device seized pursuant to a lawful warrant authorizing the search of the Gaylene Circle residence. *See* Section III(A), *supra.*

*U.S. v. Lampkin*
3:15-cr-00005-SLG-KFM
Final Report & Recommendation re Motion to Suppress     Page 14 of 18

# IV. CONCLUSION

For the foregoing reasons, the Court recommends that Lampkin's Motion to Suppress (Doc. 491) be **DENIED**.

DATED this 5th day of October, 2016, in Anchorage, Alaska.

/s/Deborah M. Smith
Chief United States Magistrate Judge

Pursuant to the Judge Gleason's order at Docket 513, the instant report and recommendation has been filed as a final report and recommendation. Any party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, October 11, 2016**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo, et. al*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, October 13, 2016.** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

APPENDIX A



APPENDIX B



Appendix C

